BETSY C. MANIFOLD (SBN 182450)
RACHELE R. BYRD (SBN 190634)
MARISA C. LIVESAY (SBN 223247)
BRITTANY N. DEJONG (SBN 258766)
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
livesay@whafh.com
dejong@whafh.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHIVA STEIN,<br><br>        Plaintiff,<br><br>v.<br><br>AEROJET ROCKETDYNE HOLDINGS, INC., GENERAL KEVIN P. CHILTON, USAF (RET.), THOMAS A. CORCORAN, EILEEN P. DRAKE, JAMES R. HENDERSON, WARREN G. LICHTENSTEIN, GENERAL LANCE W. LORD, USAF (RET.), AUDREY A. MCNIFF, AND MARTIN TURCHIN,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Shiva Stein ("Plaintiff"), by her attorneys, makes the following allegations against Aerojet Rocketdyne Holdings, Inc. ("Aerojet Rocketdyne" or the "Company") and the members of the board of directors of Aerojet Rocketdyne (the "Board" or "Individual Defendants," along with Aerojet Rocketdyne, collectively referred to as the "Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed acquisition (the "Proposed Transaction") of Aerojet Rocketdyne by affiliates of Lockheed Martin Corporation ("Lockheed Martin"). The allegations in this complaint are based on the personal knowledge of Plaintiff as to herself and on information and belief (including the investigation of counsel and review of publicly available information) as to all other matters stated herein.

## INTRODUCTION

1. This is an action brought by Plaintiff to enjoin a transaction whereby Mizar Sub, Inc., a direct wholly owned subsidiary of Lockheed Martin ("Merger Sub") will merge with and into Aerojet Rocketdyne, with Aerojet Rocketdyne continuing as the surviving corporation as a direct wholly owned subsidiary of Lockheed Martin ("Proposed Transaction"). Pursuant to the Merger Agreement, Aerojet Rocketdyne shareholders will receive $56.00 in cash for each share of Aerojet Rocketdyne common stock owned (the "Merger Consideration"). The Board has unanimously recommended to the Company's stockholders that they vote for the Proposed Transaction at the special meeting of the Aerojet Rocketdyne shareholders.

2. To convince Aerojet Rocketdyne stockholders to vote in favor of the Proposed Transaction, on January 25, 2021, the Board authorized the filing of a materially incomplete and misleading Proxy Statement on Schedule 14A (the "Proxy Statement") with the Securities and Exchange Commission ("SEC"). The Proxy Statement violates Sections 14(a) and 20(a) of the Exchange Act by noncompliance

with Regulation G and SEC Rule 14a-9 (17 C.F.R. § 244.100 and 17 C.F.R. § 240.14a-9, respectively).

3.    Defendants have failed to disclose certain material information necessary for Aerojet Rocketdyne stockholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules and regulations and rendering certain statements in the Proxy Statement materially incomplete and misleading.

4.    In particular, the Proxy Statement contains materially incomplete and misleading information concerning the financial forecasts for the Company prepared and relied upon by the Board in recommending to the Company's stockholders that they vote in favor of the Proposed Transaction. The same forecasts were used by Aerojet Rocketdyne's financial advisors, Citigroup Global Markets Inc. ("Citigroup") and Evercore Group L.L.C. ("Evercore" and with Citigroup, the "Financial Advisors"), in conducting their valuation analyses in support of their fairness opinion. The Proxy Statement also contains materially incomplete and misleading information concerning certain financial analyses performed by the financial advisor.

5.    The material information that has been omitted from the Proxy Statement must be disclosed prior to the forthcoming stockholder vote in order to allow the stockholders to make an informed decision regarding the Proposed Transaction.

6.    For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violations of Regulation G and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, all material information discussed below is disclosed to Aerojet Rocketdyne stockholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated without corrective disclosures, to recover damages resulting from Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7.  This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8.  This Court has personal jurisdiction over each defendant named herein because each defendant is either a corporation that does sufficient business in California or an individual who has sufficient minimum contacts with California to render the exercise of jurisdiction by the California courts permissible under traditional notions of fair play and substantial justice.

9.  Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Aerojet Rocketdyne is headquartered in this District.

**PARTIES**

10.  Plaintiff has owned the common stock of Aerojet Rocketdyne since prior to the announcement of the Proposed Transaction herein complained of and continues to own this stock.

11.  Aerojet Rocketdyne is a corporation duly organized and existing under the laws of Delaware and maintains its principal offices in El Segundo, California. Aerojet Rocketdyne is, and at all relevant times hereto was, listed and traded on the New York Stock Exchange under the symbol "AJRD."

12.  Defendant General Kevin P. Chilton, USAF (Ret.) has been a member of the Board since 2018.

13.  Defendant Thomas A. Corcoran is has been a member of the Board since 2008.

14.  Defendant Eileen P. Drake has been a member of the Board since 2015 and is the Chief Executive Officer and President of the Company.

15.  Defendant James R. Henderson has been a member of the Board since 2008.

16.   Defendant Warren G. Lichtenstein has been a member of the Board since 2008 and as the Company's Executive Chairman since 2016.

17.   Defendant General Lance W. Lord, USAF (Ret.) has been a member of the Board since 2015.

18.   Defendant Audrey A. McNiff has been a member of the Board since 2020.

19.   Defendant Martin Turchin has been a member of the Board since 2008

20.   The Defendants referred to in paragraphs 12-19 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

21.   The Defendants referred to in paragraphs 11-19 are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### *The Proposed Transaction*

22.   On November 3, 2020, Aerojet Rocketdyne announced that it had entered into the Agreement and Plan of Merger with Lockheed Martin (the "Merger Agreement"):

> EL SEGUNDO, Calif., Dec. 20, 2020 (GLOBE NEWSWIRE) -- Aerojet Rocketdyne Holdings, Inc. (NYSE: AJRD) today announced that it has entered into a definitive agreement to be acquired by Lockheed Martin Corporation (NYSE: LMT) in an all-cash transaction with a total equity value of $5.0 billion.
>
> Under the terms of the agreement, which has been unanimously approved by each company's Board of Directors, Lockheed Martin will acquire Aerojet Rocketdyne for $56.00 per share in cash, representing a premium of approximately 33% to Aerojet Rocketdyne's closing stock price on December 18, 2020, and a premium of approximately

42% to the Company's volume weighted average stock price ("VWAP") for the last 90 trading days.

As part of the transaction, Aerojet Rocketdyne declared a $5.00 per share pre-closing special dividend to holders of its common shares and convertible senior notes, on an as-converted basis. The special dividend will be paid on March 24, 2021, to holders of record as of March 10, 2021. The payment of this special dividend, unless revoked, will adjust the consideration to be paid by Lockheed Martin to $51.00 per share at closing.

"We are pleased to bring together our complementary companies in a transformative transaction that will provide premium cash value for our stockholders and tremendous benefits for our employees, customers and partners," said Eileen P. Drake, CEO and President of Aerojet Rocketdyne. "Joining Lockheed Martin is a testament to the world-class organization and team we've built and represents a natural next phase of our evolution. As part of Lockheed Martin, we will bring our advanced technologies together with their substantial expertise and resources to accelerate our shared purpose: enabling the defense of our nation and space exploration. On behalf of the Aerojet Rocketdyne Board and management team, I'd like to thank all of our employees for their unwavering dedication and focus in helping us achieve this great milestone."

The transaction is expected to close in the second half of 2021 and is subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by Aerojet Rocketdyne's stockholders. A transition team will be formed to allow for a seamless

integration and ensure continuity for customers, employees and other stakeholders.

**Advisors**

Citigroup Global Markets Inc. and Evercore were co-lead financial advisors to Aerojet Rocketdyne. Jenner & Block LLP acted as M&A counsel and Gibson, Dunn & Crutcher LLP acted as Securities counsel.

\* \* \*

***The Materially Misleading and Incomplete Solicitation Statement***

23.   On January 25, 2021, Defendants caused the Proxy Statement to be filed with the SEC in connection with the Proposed Transaction.  The Proxy Statement solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

***Financial Forecasts***

24.   The Proxy Statement discloses tables for forecasts for Aerojet Rocketdyne, including the Base Case Forecast, the Adjusted Base Case Forecast, Risk Adjusted Case Analysis, and the Management Presentation Forecast (the "Projections"). However, the Proxy Statement fails to provide material information concerning these Projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Transaction. These financial forecasts were also relied upon by the

Financial Advisors in rendering their fairness opinions.

25.     With respect to the Company Projections, the Proxy Statement fails to provide: (i) the value of certain line items used to calculate (a) EBITDA, and (b) Unlevered Free Cash Flow; (c) Adjusted EBITDA, and (d) Adjusted Unlevered Free Cash Flow, all of which are non-GAAP measures; and (ii) a reconciliation to its most comparable GAAP measures, in direct violation of Regulation G and, consequently, Section 14(a).

26.     The SEC has indicated that if the most directly comparable GAAP measure is not accessible on a forward-looking basis, the company must disclose that fact, provide any reconciling information that is available without unreasonable effort, identify any unavailable information and disclose the probable significance of that information. A company is permitted to provide the projected non-GAAP measure, omit the quantitative reconciliation and qualitatively explain the types of gains, losses, revenues or expenses that would need to be added to or subtracted from the non-GAAP measure to arrive at the most directly comparable GAAP measure, without attempting to quantify all those items.

27.     When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all forecasts and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of

unique company-specific, non-GAAP financial measures (as Aerojet Rocketdyne included in the Proxy Statement here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

29.　The SEC has repeatedly emphasized that disclosure of non-GAAP forecasts can be inherently misleading and has therefore heightened its scrutiny of

---

[1]　Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (last visited Feb. 2, 2021) (emphasis added).

the use of such forecasts.[2]   Indeed, the SEC's Division of Corporation Finance released a new and updated Compliance and Disclosure Interpretation ("C&DI") on the use of non-GAAP financial measures to clarify the extremely narrow and limited circumstances, known as the business combination exemption, where Regulation G would not apply.[3]

30. More importantly, the C&DI clarifies when the business combination exemption does not apply:

> There is an exemption from Regulation G and Item 10(e) of Regulation S-K for non-GAAP financial measures disclosed in communications subject to Securities Act Rule 425 and Exchange Act Rules 14a-12 and 14d-2(b)(2); it is also intended to apply to communications subject to Exchange Act Rule 14d-9(a)(2). This exemption does not extend beyond such communications. Consequently, if the same non-GAAP financial measure that was included in a communication filed under one of those rules is also disclosed in a Securities Act registration statement, proxy statement, or tender offer statement, this exemption from Regulation G and Item 10(e) of Regulation S-K would not be available for that non-GAAP financial measure.

---

[2]   *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, HARVARD LAW SCHOOL FORUM ON CORPORATE GOVERNANCE (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/ (last visited Feb. 2, 2021); Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, THE NEW YORK TIMES (Apr. 22, 2016), http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0 (last visited Feb. 2, 2021).

[3]   *Non-GAAP Financial Measures*, U.S. SECURITIES AND EXCHANGE COMMISSION (Apr. 4, 2018), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm#101 (last visited Feb. 2, 2021). To be sure, there are other situations where Regulation G would not apply but are not applicable here.

*Id.*

31.     Thus, the C&DI makes clear that the so-called "business combination" exemption from the Regulation G non-GAAP to GAAP reconciliation requirement applies solely to the extent that a third-party, such as a financial advisor, has utilized projected non-GAAP financial measures to render a report or opinion to the Board. To the extent the Board also examined and relied on internal financial forecasts to recommend a transaction, Regulation G applies.

32.     Thus, to bring the Proxy Statement into compliance with Regulation G as well as cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

***Financial Analyses***

33.     With respect to Citigroup's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:  (i) cash pension contributions and reimbursements; (ii) net environmental remediation cash flows and real estate cash flows; (iii) stock based compensation; (iv) terminal values for the Company; (v) the basis, inputs, and assumptions for applying an illustrative range of perpetuity growth rates of 2.0% to 3.0%; (vi) the basis, inputs, and assumptions for applying discount rates ranging from 7.8% to 9.0%; (vii) the Company's net debt as of September 30, 2020; (viii) the number of shares of the Company on a fully diluted basis; and (ix) the basis, inputs, and assumptions for applying a 2.7% after tax cost of debt and 0% perpetuity growth rate for calculating the net present value of net CAS reimbursements and cash pension contribution/OPEB payments.

34.     With respect to Citigroup's *Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose (i) Goldman's basis for applying illustrative one year forward adjusted firm value to Adjusted EBITDA multiples of 9.5x to 10.9x; and (ii) the inputs underlying the discount rate of 8.7%.

35.     With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy

Statement fails to disclose: (i) cash pension contributions and reimbursements; (ii) net environmental remediation cash flows and real estate cash flows; (iii) stock based compensation; (iv) terminal values for the Company; (v) the basis, inputs, and assumptions for applying an illustrative range of perpetuity growth rates of 2.0% to 3.0%; (vi) the basis, inputs, and assumptions for applying discount rates ranging from 7.50% to 8.75%; (vii) the Company's net debt; (viii) the number of shares of the Company on a fully diluted basis; and (ix) the basis, inputs, and assumptions for applying a 2.7% after tax cost of debt and 0% perpetuity growth rate for calculating the net present value of net CAS reimbursements and cash pension contribution/OPEB payments.

36.     With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose the selected public market trading price targets for the shares of the Company common stock as of December 18, 2020.

37.     With respect to Evercore's *Illustrative Present Value of Future Share Price*, the Proxy Statement fails to disclose: (i) the basis, inputs, and assumptions for applying a range of illustrative price-to-earnings ratios of 20.6x to 22.6x; the basis, inputs, and assumptions for applying the range of discount rates ranging from 8.25% to 9.25%.

38.     With respect to Evercore's *Premiums Paid Analysis*, the Proxy Statement fails to disclose the premiums and transactions values observed by Evercore in the analysis.

39.     In sum, the Proxy Statement independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to their most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy Statement independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy Statement to garner votes in

support of the Proposed Transaction from Aerojet Rocketdyne shareholders.

40. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff will not be able to make a fully informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## FIRST CAUSE OF ACTION

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)

41. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

42. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43. As set forth above, the Proxy Statement omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

44. The failure to reconcile the numerous non-GAAP financial measures included in the Proxy Statement violates Regulation G and constitutes a violation of

Section 14(a).

## SECOND CAUSE OF ACTION

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

45.    Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

46.    SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ." 17 C.F.R. § 240.14a-9.

47.    Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading." 17 C.F.R. § 244.100(b).

48.    Defendants have issued the Proxy Statement with the intention of soliciting shareholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, amongst other things, the financial forecasts for the Company.

49.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted

from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

50.   The Individual Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

51.   The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading.

52.   The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial forecasts.

53.   Aerojet Rocketdyne is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy Statement.

54.   The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

55.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### THIRD CAUSE OF ACTION

**(Against the Individual Defendants for**

**Violations of Section 20(a) of the Exchange Act)**

56.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57.    The Individual Defendants acted as controlling persons of Aerojet Rocketdyne within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Aerojet Rocketdyne, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

58.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were

1   thus directly involved in preparing the Proxy Statement.

2        60.    In addition, as the Proxy Statement sets forth at length, and as described
3   herein, the Individual Defendants were involved in negotiating, reviewing, and
4   approving the Merger Agreement. The Proxy Statement purports to describe the
5   various issues and information that the Individual Defendants reviewed and
6   considered. The Individual Defendants participated in drafting and/or gave their input
7   on the content of those descriptions.

8        61.    By virtue of the foregoing, the Individual Defendants have violated
9   Section 20(a) of the Exchange Act.

10       62.    As set forth above, the Individual Defendants had the ability to exercise
11  control over and did control a person or persons who have each violated Section 14(a)
12  and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their
13  positions as controlling persons, these Defendants are liable pursuant to Section 20(a)
14  of the Exchange Act. As a direct and proximate result of Individual Defendants'
15  conduct, Plaintiff will be irreparably harmed.

16       63.    Plaintiff has no adequate remedy at law. Only through the exercise of
17  this Court's equitable powers can Plaintiff be fully protected from the immediate and
18  irreparable injury that Defendants' actions threaten to inflict.

19                           **RELIEF REQUESTED**

20       **WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

21       A.    Preliminarily and permanently enjoining Defendants and their counsel,
22  agents, employees and all persons acting under, in concert with, or for them, from
23  proceeding with, consummating, or closing the Proposed Transaction, unless and
24  until the Company discloses the material information discussed above which has been
25  omitted from the Proxy Statement;

26       B.    In the event that the proposed transaction is consummated, rescinding
27  it and setting it aside, or awarding rescissory damages;

28       C.    Awarding compensatory damages against Defendants, individually and

1   severally, in an amount to be determined at trial, together with pre-judgment and post-

2   judgment interest at the maximum rate allowable by law, arising from the Proposed

3   Transaction;

4        D.      Awarding Plaintiff the costs and disbursements of this action and

5   reasonable allowances for fees and expenses of Plaintiff's counsel and experts; and

6        E.      Granting Plaintiff such other and further relief as the Court may deem

7   just and proper.

8                          **DEMAND FOR JURY TRIAL**

9        Plaintiff hereby demands a trial by jury.

10

11   DATED: February 2, 2021              **WOLF HALDENSTEIN ADLER**
                                          **FREEMAN & HERZ LLP**
12

13                                        By:    */s/ Rachele R. Byrd*
                                                RACHELE R. BYRD
14
                                          BETSY C. MANIFOLD
15                                        RACHELE R. BYRD
                                          MARISA C. LIVESAY
16                                        BRITTANY N. DEJONG
                                          750 B Street, Suite 1820
17                                        San Diego, CA 92101
                                          Telephone: (619) 239-4599
18                                        Facsimile: (619) 234-4599
                                          manifold@whafh.com
19                                        byrd@whafh.com
                                          livesay@whafh.com
20                                        dejong@whafh.com

21                                        *Counsel for Plaintiff*

22

23

24

25

26

27

28